MARTHA A. McMULLIN et al.

*v.*

SARAH N. DOUGHTY and JOHN D. McMULLIN, administrator
of John H. Doughty.

[Filed July 10th, 1901.]

Objections by the defendant to the report of commissioners in partition
reviewed and report sustained, for reasons stated in the opinion.

———

On bill for partition. On motion to quash report of commissioners and proofs taken thereon.

*Mr. John D. McMullin,* for the complainants and for himself as administrator.

*Mr. Herbert A. Drake,* for Sarah N. Doughty, defendant.

*Mr. William M. Clevenger,* for the commissioners and for Frank Middleton, the surveyor.

GREY, V. C. (orally).

This is a suit in partition between Martha A. McMullin, the owner of an undivided one-fifth part, and Sarah N. Doughty, the owner of four undivided fifths, of what is known as the "Doughty estate," lying in Atlantic county. The property consists largely of "pine land," and includes a sawmill, village and a millpond, a mansion-house and the attendant tenant-houses of the workmen, some gravel pits and a wide expanse of pine land and small timber, and also several outlying lots, unconnected with the great tract. Touching these outlying lots there is little dispute. The business of the sawmill seems to have decreased in recent years. The Doughty estate also includes, in the outbound description of the great tract, several pieces of property, which

had either been sold off by General Doughty in his lifetime, or by his heirs since his death, or which General Doughty did not own at the time of his death.

The estate is very extensive in its superficial area, covering, in its entirety, something more than fourteen thousand acres. The bulk of it lies together, and is traversed by the main line of the Camden and Atlantic railroad, by the main line of the Philadelphia and Atlantic City railroad, is approached on its southwesterly side, within a mile or two, by the main line of the West Jersey and Atlantic railroad, and the northeasterly corner of it is crossed by the Brigantine branch of the Philadelphia and Atlantic City railroad running to Brigantine Beach. The property, speaking of it generally, is traversed by a number of common country roads. Running almost parallel to the Camden and Atlantic main line tract is what has been spoken of in the testimony as a state or county road, built under the Road Improvement law of the state, by the state and county together. This highway is said to be a first-rate road, and leads in a general northwest and southeasterly direction across the estate. It is probably the most traveled of any of the roads which traverse the property.

The commissioners were appointed for the purpose of dividing these lands by actual partition among the owners, according to their several interests in value. They have reported what they deem to be a just and fair partition according to value, and their action has been made the subject of objection by the defendant Sarah N. Doughty, and a motion is now made, upon the coming in of the report, to quash the report, upon stated grounds. It is unnecessary to restate the testimony at length, either that taken before the commissioners on their partition of the property or that given here in support of the motion to quash.

The objections to the report have been succinctly stated by the defendant in two separate papers, one in somewhat general terms, the later one naming specific acts alleged to indicate partiality and misconduct of the commissioners, to the disadvantage of Miss Doughty, the defendant. I will first consider these objections to the conduct of the commissioners.

The first ground of objection is that the commissioners were not sworn in (as the defendant claims they were directed to be)

McMullin *v.* Doughty.

by the vice-chancellor who made their appointment. The order of the vice-chancellor which directed the commissioners to be sworn does not require them to be qualified before him. Conversations between the vice-chancellor and the counsel at side bar relative to the conduct of business have no obligatory force. I have no recollection as to what was actually said by me as to the swearing in of the commissioners. It is wholly unimportant whether they were sworn in before the vice-chancellor or before a master in chancery, as actually happened in this case. The first objection is of no significance, and is overruled.

It is sought to give this matter some importance, in framing the defendant's criticisms of the report, by making it the basis of the second objection, taken by the defendant at the time the commissioners were sworn in, to the effect that the defendant then remonstrated because they were not sworn in as the vice-chancellor had directed. The second objection shows no reason for rejecting the commissioners' report, and is overruled.

The third criticism is based upon the same suggestion—that out of the colloquy then had between the defendant and the commissioners, or between the defendant and Commissioner Clevenger, the latter objected to the presence of the defendant at the next meeting of the commissioners; that the defendant took such objection to be a refusal to permit her to be present, and did not attend.

I have looked over an extended correspondence between Mr. Clevenger and Mr. Drake, the counsel for the defendant, and I find there was an expression of disinclination on the part of the commissioners to have either of the parties present. It is but just to all to say that there had previously been indicated in this cause a very considerable amount of feeling between the parties—complainant and defendant. It is not difficult to suppose that the commissioners desired, in performing their duty, to be relieved from friction which might develop if the parties were present at all the meetings of the commissioners. This expression of a wish that the parties should not attend meetings of the commissioners was not a prohibition, but was a mere utterance of the opinion of the commissioners. It did not apply to the parties' counsel, and in one of Mr. Clevenger's letters to Mr.

McMullin *v.* Doughty.

Drake the right of the defendant herself to be present was clearly admitted and stated. There was, in fact, no exclusion of the parties. Miss Doughty, if she stayed away, did so of her own choice.

Nothing in the correspondence or proofs, or in the subsequent testimony which has been here submitted, indicates that Miss Doughty, by reason of anything done by the commissioners, or because of her absence from any proceedings or meetings, was in any way put to a disadvantage. The third objection is no ground upon which the court should suppress the report.

The fourth objection is based upon the same charge—that Commissioner Clevenger had displayed such feeling and repugnance against the defendant and her counsel, and such favor and partiality to the complainant, as were entirely inconsistent with his impartial and judicial action. The proofs show affirmatively that Commissioner Clevenger was actuated by a purpose impartially and fairly to perform his duty, under somewhat difficult circumstances. For the reasons above stated, and because I find nothing whatever in the case which justifies such a charge, I hold this exception to be unsustained.

The further objection is taken by the defendant to the commissioners' report in the charge that Mr. John D. McMullin (who had acted as attorney or solicitor of the complainant, and was a party to the suit as administrator of a decedent having an interest in the case) had wrongfully obtained a person who was neither a party, nor counsel, nor driver, who was unknown to the defendant, to attend and go around with him on an inspection of the property, although the commissioners had declared that no one but the parties, their counsel and their drivers should accompany them. This is claimed to have been a partiality shown Mr. McMullin. This specially-mentioned instance of partiality is a fair specimen of these charges. The testimony proves, without contradiction, that the unknown party who accompanied Mr. McMullin was a friend of his, who was casually invited to act as his driver. Nothing is shown to indicate that this gentleman did anything to interfere with, or intrude upon, the commissioners performing their duty, nor does he appear to have done anything but drive the team. He does not appear to have known any-

thing about the property, or to have said anything about it, or to have had any relation to it. If this incident is to receive any notice, its only effect is to show that none of the commissioners favored any of the parties in the particular mentioned, nor, so far as can be perceived, in any other matter. The fifth objection is overruled.

The sixth objection to the action of the commissioners is that Mr. McMullin, the same gentleman previously mentioned, who acted as solicitor of the complainant, was previously cognizant of the purpose of the majority of the commissioners as to the division they would make, and had expressed himself as satisfied with their intended action, and was in such close touch with them as to be in conference with them in the absence of the defendant, and to be apprised of their action beforehand. There was some testimony taken on this point. I think I am bound to say, in justification of worthy gentlemen who have fairly performed an unpleasant duty, that the testimony which has been directed to sustain this criticism is wholly unworthy of attention. The affirmative proof shows that the majority of the commissioners referred to gave no privilege to either party which was denied to the other. There is no showing of even an attempt to influence them in their action, or of any confidential or other communication by any of them to Mr. McMullin of their intended action before it was actually made. The proof is positive and, in my judgment, conclusively refutes the imputation of partiality or bad faith on the part of the commissioners. The sixth exception must be overruled.

The seventh objection is that Mr. McMullin was frequently at the house and dined as a guest of Mr. Champion, one of the majority of the commissioners, during the pendency of the commission, and that Mr. McMullin and his father, Charles T. McMullin (who is the husband of the title-owning complainant, Mrs. McMullin), were so intimately connected as to spend much time in business and social intercourse with him, making judicial action impossible as a commissioner. This charge has also been examined upon in testimony. Mr. McMullin, the solicitor, and Mr. Champion, one of the commissioners, the parties attacked, deny the imputation under oath, and nothing throws any doubt

McMullin *v.* Doughty.

upon the truth of their statements. I think it is but justice to them to say that the testimony is of no weight whatever to cast even a suspicion of any attempted currying of favor or of any improper relations between them. The seventh objection is over-ruled.

Nothing in the whole conduct of the proceedings, from the beginning to the end, has been shown which leads me to believe that the commissioners, or any of them, have, at any time, been guilty of any misconduct in the performance of their duty, or have exhibited any partiality in favor of the complainant against the defendant.

The eighth objection is that the two majority commissioners were guilty of misconduct and partiality in favor of the complainant and John D. McMullin, administrator, &c., as against the defendant, in the actual making of the partition. This objection fairly includes the first three general objections made by the defendant, charging irregularity of division, giving Miss Doughty less than her full four-fifths proportion in value, and that the partition was made by the commissioners upon wrong principles. This eighth objection and the previous first three will therefore be considered together. Such objections to a commissioners' report must stand or fall upon the showing that the commissioners, in their action, have made their division upon incorrect or wrong principles, or upon an assignment of shares so unequal as to the respective parts apportioned that, the inequality being shown, it might be here corrected or the matter be returned to the commissioners, with special instructions to make the shares equal, according to the interest held by the parties, or be referred to newly-appointed commissioners.

There are some considerations which should be stated as explanatory of the return of the commissioners. This procedure seeks an actual division of a great estate, largely woodland, consisting of about fourteen thousand acres. The several shares being four-fifths and one-fifth, it was impossible for the commissioners to apportion them to the respective parties by an allotment by chance. There were other reasons why a chance drawing of shares could not be made. In the first place, Miss Doughty herself was entitled to consideration in the assignment of her

mansion-house. It was her home, and had been for years. Her interest in the estate is very much greater than Mrs. McMullin's, and it is in every way fitting that the family mansion should go as part of her share. It seems to have been by the agreement of all parties that Miss Doughty was given the mansion-house. Again, all the parties from the beginning to the end—everybody interested in this transaction—have, from the start, assumed that the property could be divided, and that there should be no sale. There was no need of any sale. The attention of the parties has been directed to that point. They appear to have united in the declaration that there could be actual partition, according to the relative interests of the parties in the property, and to have proceeded before the commission with that object in view.

Under these circumstances, the commissioners were unable to have that safe refuge for commissioners in such cases—a drawing by chance. They were, of necessity, compelled to divide the property into aliquot parts, representing the several interests of the parties, and to assign the shares so divided to the respective parties, according to their interests. The commissioners have divided this property. Speaking generally as to the division of the great tract, known as the Doughty tract, they have divided it in such a way that the portion which lies to the east of the Camden and Atlantic railroad and a small lot at Ventnor they have assigned, as one-fifth in value of the whole estate, to Martha A. McMullin. All the rest has been given to Miss Doughty, as four-fifths value of the whole estate.

The defendant's principal criticism of the partition made by the commissioners is that the lands to the west of the Camden and Atlantic railroad included in the share assigned to Miss Doughty, with the other property given her, are not, at a fair valuation, a full four-fifths share of the whole estate. The disparity charged is ascribed to an alleged overvaluation of Miss Doughty's share and an alleged undervaluation of the complainant's share, and to a claim of injustice to Miss Doughty in making the Camden and Atlantic railroad the line of division, when, Miss Doughty's counsel contends, a fair division line would be the county road running almost parallel to that railroad, both crossing the whole property, giving to Miss Doughty and taking

from Mrs. McMullin, the lands lying between that railroad and the county road.

The claim of overvaluation of the lands given to Miss Doughty and undervaluation of the portion given to complainant is not sustained by the proofs. Miss Doughty was given the part containing the mansion-house, the mill, the pond and power and the accompanying tenant-houses, the gravel pits in use, and also an acreage of land sufficiently large to enable her to enjoy all of these for their best uses, and a large and extensive surrounding tract. Her portion may fairly be estimated, acre for acre, to have a much higher value than the share set off to Mrs. McMullin. Miss Doughty's portion enjoys the advantage of being crossed, for its longest distance, by the main line of the Philadelphia and Atlantic City railroad. She receives the fronting on both sides of this railroad for a distance of at least four miles, with a lay of land on each side most favorable for subdivision and sale. She also has the largest frontage on one side of the Camden and Atlantic railroad. The southwesterly portion of her share lies, for a long distance, within a mile or two of the main line of the West Jersey and Atlantic railroad. The part set off to her includes laid-out highways in much greater proportion than does the part set off to Mrs. McMullin. It also adjoins those parts of the original tract, where, by reason of previous sales, development has made some progress. All these incidents of advantage attached to the part set off to Miss Doughty were fairly within the consideration of the commissioners in dividing the property according to its value among the parties in proportion to their several interests. There is no showing that they overvalued the lands in Miss Doughty's share, and thus decreased their extent.

Mrs. McMullin's portion lies in the least-developed part of the property, by either railroad or highway construction. It contains neither improved land nor buildings of any sort. An attempt has been made to show that its growing timber was, to some extent, superior to that on Miss Doughty's share, but the observation of the witnesses was so superficial in the extent of their examination of the lands that their testimony carries little weight. Another suggestion by a witness is that the portion of Mrs. McMullin's

McMullin v. Doughty.

share lying nearest to the village of Absecon had a very large value for village or small farm uses. The values indicated were almost purely speculative, depending much more upon the skill of the exploiter for sales, than on the intrinsic characteristics of the land. If there were any substance in the criticism, it shows no special advantage given to Mrs. McMullin, for Miss Doughty's land of the same sort approaches almost as near to Absecon and lies even nearer to Atlantic City. Nothing shown indicates an undervaluing of the lands set off to Mrs. McMullin, thus increasing the area of the portion assigned to her.

As to the contention of the defendant that a fair division required that the improved county road, parallel to the Camden and Atlantic railroad, should be the line of division of the shares assigned, there is even less to be said in criticism of the action of the commissioners. The defendant insists that the selection of the Camden and Atlantic railroad, rather than the improved county road, as the line of division, has cut Miss Doughty off from access to the county road, which is the most used highway through the tract. There is no such cutting off from access, for the maps, made twelve years ago, show that there were then three highways running out of the lands assigned to Miss Doughty intersecting the county road. The selection of the line of the railroad does deprive Miss Doughty of the advantage of a frontage upon the county road, which would undoubtedly have added to the value of her tract. But considering the whole property, as divided, Miss Doughty has very much the advantage over Mrs. McMullin in convenience of access and frontage upon lines of communication. She has, as stated, the very superior frontages upon main line railroads and also a much more extended development of highways on her tract. To have given the county road as the line of division would have prevented Mrs. McMullin from having any frontage upon any main line railroad on any part of her share, leaving the only railroad which would even touch her lands to be the Brigantine branch of the Philadelphia and Atlantic City, which, for the purposes of land development, is practically valueless. If the action of the commissioners in this matter is fairly considered, it will be seen that, in bringing Mrs. McMullin's portion up to the line of the Camden and

McMullin *v.* Doughty.

Atlantic railroad, they were arranging an equalizing frontage, which might give to her share a fair proportionate opportunity for the more speedy development secured to Miss Doughty by the favorable location of her share. They appear, in this incident of their action, to have conducted their business with fairness and impartiality, doing no greater harm to Miss Doughty's share than was necessary to make Mrs. McMullin's share have its proper relative value. Certainly their action in this particular cannot be impugned because based upon a wrong principle, or resulting in giving a manifestly unconscionable advantage to Mrs. McMullin. The eighth objection and the first three submitted, as above stated by the defendant, should be overruled.

The attacks which have been made upon the reported division are based, in great part, upon the testimony of persons who had but little acquaintance with the Doughty estate, and who were specially taken down to the property by Miss Doughty and her counsel, or those in her interest, for the purpose of making an estimate to impugn the fairness and proportionate values of the shares assigned. Such testimony is of less weight than would have been the testimony of persons resident in that locality, who had previously been intimately acquainted with the property. Only two or three witnesses of the latter class were produced. One was Mr. Emmons, who had had some opportunity to know the property, having been in Miss Doughty's employ. His testimony affected but a very small portion of the tract, and was of little weight. Mr. Farr had handled some of the property adjacent to this estate and had some acquaintance with the adjoining portion of Miss Doughty's share. Mr. Jason Waters, who owns property adjoining that which had been assigned to Mrs. McMullin, was also examined. These witnesses were brought to show that Mrs. McMullin's share had a large speculative value for lots and small farms. Such testimony does not conform to the previous history of the tract, as indicated by the deeds and maps and the location of the land, and is largely conjecture. The realization of the values of land of this sort depends very largely upon the skill and energy of the salesman of such lands. The value of the land itself for such purposes is an unsolved riddle.

It can readily be seen that there may be in the commissioners' division of such a large estate some errors in valuation. It does not appear that there is any intentional favoritism, nor do the possible errors lie all in favor of one side, nor are they of great significance.

I have now considered in detail all of the objections made on which it is moved that the report of the commissioners be rejected. Of the purpose of the commissioners to make a fair report, and their substantial accomplishment of that result, I have been satisfied, after an examination of all the proceedings and after hearing the testimony and reading the correspondence between counsel and the commissioners. They sought to make what they believed to be a fair and equal partition among the parties interested, in proportion to their several interests, and I am satisfied that they have come as near to the accomplishment of that result as it is probable any commissioners could come. Under these circumstances, no reason appears why the commissioners' report should not be confirmed. The costs of the litigation attendant upon the motion to reject the report must be charged to the defendant.

The question of the expenses of the commissioners, as reported by them, has not been presented by counsel, and the hearing of this matter must lie over until a later day.